UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| JAMES DAVID McCLAIN, | Case No. 3:14-cv-00269-MMD-CLB |
| Petitioner, | ORDER |
| v. | |
| ROBERT LeGRAND, *et al.*, | |
| Respondents. | |

This represented habeas matter by Petitioner James David McClain ("Petitioner or "McClain") under 28 U.S.C. § 2254 comes before the Court on McClain's motion for an evidentiary hearing and a *sua sponte* exhaustion inquiry initiated by the Court. (ECF Nos. 90, 93.)

I. **BACKGROUND**

Petitioner James David McClain seeks to set aside his 2012 Nevada state conviction, pursuant to a guilty plea, of two counts of sexual assault of a child under 14 years of age. He is sentenced to two consecutive sentences of life with eligibility for parole after 35 years on each. Petitioner moves for an evidentiary hearing so that he may, *inter alia*, seek to overcome the procedural default of the claims of ineffective assistance of trial counsel in his second amended petition, pursuant to *Martinez v. Ryan*, 566 U.S. 1 (2012). (*See* ECF Nos. 69, 84.)

II. **DISCUSSION**

**A. Exhaustion**

The Court previously held that McClain's claims were technically exhausted by procedural default on the ground that he relied exclusively on *Martinez* to overcome the

default, which the federal courts follow but Nevada state courts do not. (*See, e.g.*, ECF No. 93 at 1–2 (broadly summarizing the basis for the prior ruling and related procedural history).) In the federal reply, however, McClain relied additionally in the alternative on an attorney-abandonment basis for overcoming the procedural default pursuant to *Maples v. Thomas*, 565 U.S. 266 (2012). Given that Nevada state courts follow *Maples* in at least some circumstances, the Court directed McClain to show cause why the petition was not subject to dismissal, or other alternative action, given that his claims potentially were not technically exhausted because a procedural default potentially might be overcome in the state courts.

The Court is not persuaded by McClain's contention that Nevada state courts apply *Maples* only in a narrow context where the alleged attorney abandonment caused the untimely filing of a state postconviction petition, as opposed to alleged abandonment occurring after the filing of a petition. (*See* ECF No. 94 at 2–6.)

The Supreme Court of Nevada clearly has considered the potential availability of relief under *Maples* in situations where any alleged attorney abandonment would have occurred during the pendency of a state petition. *See Guy v. State*, No. 65062, 2017 WL 5484322, at *2 (Nev. Nov. 14, 2017) (unpub.); *Guerrero v. State*, No. 69678, 2017 WL 2628213, at *1 (Nev. June 15, 2017) (unpub.); *Emil v. State*, No. 65627, 2016 WL 1638750, at *1 n.1 (Nev. Apr. 22, 2016) (unpub.) (alternative holding); *Bradford v. State*, No. 61559, 2014 WL 5316509, at *1 (Nev. Oct. 16, 2014) (unpub.). While the decisions did not grant relief on the facts respectively presented in the cases, the decisions did not categorically rule out application of *Maples* in the post-filing situations presented as a matter of law under Nevada state law. Nor did the prefiling context cases that McClain relies upon in his argument contain language addressing other contexts, much less rule out application of *Maples* in other contexts.

In this regard, McClain maintains that the Nevada state courts would apply *Maples* in only the prefiling context rather than also the post-filing context because attorney abandonment would constitute an impediment external to the defense only in the former

context rather than the latter. (*Id.* at 3–6.) However, in *Maples* itself, the Supreme Court referred to attorney abandonment—without restriction as to context—as constituting an impediment external to the defense because the alleged abandonment severed the attorney-client agency relationship. 565 U.S. at 281; *see also Harris v. State*, 407 P.3d 348, 352 (Nev. Ct. App. 2017). Nothing in the Nevada state appellate courts' reference to attorney abandonment as an impediment external to the defense in one context necessarily distinguishes that context from another where an attorney also has abandoned a petitioner. Again, the Nevada state court decisions include no language categorically precluding the application of *Maples* in Nevada in post-filing contexts. McClain's attempt to infer such a categorical statement from references to an impediment external to the defense is unpersuasive. The reference to an impediment external to the defense does not necessarily distinguish one situation where the attorney-client agency relationship has been severed from another.[1]

---

[1] In a related vein, McClain posits that it stands to reason that there must be something more than "general abandonment" by counsel after a state petition is filed to constitute cause under the Nevada caselaw given that petitioners are not entitled to state postconviction counsel in Nevada. He urges that the state courts do not recognize such a "general abandonment" as cause because such a post-filing abandonment is the equivalent of having to proceed *pro se*, which otherwise does not provide a basis for cause. He maintains that it therefore is logical that something more than a "general," post-filing abandonment—such as an abandonment that prevented a timely filing—is necessary for cause to overcome a default under Nevada law. (ECF No. 94 at 5.)

McClain's logic is flawed and begs the question even further. Nevada hardly is unique in noncapital petitioners not having a right to state postconviction counsel. The application of *Maples* in federal court has not been restricted to situations where the petitioner had a right to postconviction counsel. *See, e.g.*, *Rudin v. Myles*, 781 F.3d 1043, 1055–56 (9th Cir. 2014) (equitable tolling); *Gibbs v. LeGrand*, 767 F.3d 879, 883, 885–86 (9th Cir. 2014). The fact that Nevada noncapital petitioners do not have a right to postconviction counsel thus has no logical bearing on whether *Maples* would apply in one context rather than another. Moreover, a Nevada noncapital inmate also is not entitled to prefiling counsel, and his *pro se* status is not a basis for cause for a failure to file a timely petition. The absence of a right to counsel and the fact that *pro se* status does not constitute cause thus in truth does not distinguish a post-filing abandonment from a prefiling abandonment. McClain's logic is flawed also because it seeks to draw a distinction that in truth does not exist. Furthermore, an inmate's justifiable reliance upon an attorney who thereafter abandons the petitioner obviously is a markedly different circumstance from knowingly proceeding *pro se* with no justifiable belief that a licensed

3

Following full review, the Court is persuaded, however, that McClain in particular would not likely have a potentially viable *Maples* argument in the Nevada state courts.

In *Emil*, the Supreme Court of Nevada rejected the petitioner's reliance upon *Maples* because, *inter alia*, the petitioner sought state court relief more than one year after *Maples* had been decided. 2016 WL 1638750, at *1 n.1. To seek state court relief, McClain likely would have to overcome not only Nevada's successive petition rules but also its timeliness rules. A petitioner seeking to rely upon *Maples* while seeking to pursue a second Nevada state petition thus potentially would face an objection that he had waited more than a year after *Maples* to rely upon its attorney-abandonment rule. A petitioner in that circumstance with mental health issues conceivably might rely upon his mental health condition to excuse any delay beyond a year from the *Maples* decision. However, Nevada state courts do categorically rule out reliance upon a mental health issue as a basis for establishing cause to overcome a procedural default. *See, e.g.*, *Phillips v. State*, No. 76371-COA, 2019 WL 5618314, at *1 (Nev. Ct. App. Oct. 30, 2019).[2] It thus would appear that McClain would be precluded from potentially relying successfully on *Maples* if he were to return to state court to seek to exhaust his claims.

The Court therefore concludes following its *sua sponte* inquiry that McClain's alternative reliance on *Maples* in the reply does not undercut the Court's prior holding that his claims are technically exhausted by procedural default. The Court emphasizes that the exhaustion ruling in the present case with respect to *Maples* is based upon the current Nevada state jurisprudence regarding the application of *Maples* and the particular facts

---

attorney instead is handling the matter, whether before or after filing. McClain's logic simply is fundamentally flawed in multiple respects.

At bottom, McClain's strained logic does not obscure the instead salient points that (a) the Supreme Court of Nevada in fact has considered the potential application of *Maples* in post-filing contexts, and (b) McClain has not cited a single Nevada state case that explicitly categorically rules out the application of *Maples* in post-filing contexts.

[2]In federal court, in contrast, whether a mental health issue constitutes cause potentially turns instead on a fact-based inquiry. *See, e.g.*, *Schneider v. McDaniel*, 674 F.3d 1144, 1153–55 (9th Cir. 2012).

and issues in this case. The Court will not necessarily extend the ruling, which is not binding in any event in other cases in the District, to other cases, depending on the then Nevada jurisprudence and the facts and issues in the particular case.[3]

**B. Evidentiary Hearing Request**

The Court is persuaded that an evidentiary hearing is warranted both on McClain's effort to overcome the procedural default of his claims and potentially on the merits.

**1. § 2254(e)(2) Does Not Bar an Evidentiary Hearing**

Recent Ninth Circuit authority requires the rejection of Respondents' argument that an evidentiary hearing is precluded by 28 U.S.C. § 2254(e)(2).[4]

///

---

[3]The Court further again emphasizes to habeas counsel the importance of clearly and completely identifying a petitioner's bases for overcoming a procedural default at the time that the technical-exhaustion issue is being argued. *See* (ECF No. 82 at 10–12); *see also Myers v. Filson*, No. 3:14-cv-00082-MMD-VPC, 2017 WL 5559954, at *4 n.5 (D. Nev. Nov. 17, 2017). If, as in the present case, a petitioner maintains or confirms that he is relying exclusively on *Martinez* to overcome a procedural default but then later argues also other grounds, there is a substantial probability that the Court's prior exhaustion holding then will be revisited.

[4]This section provides:

(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—

(A) the claim relies on—

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

5

At the outset, a petitioner seeking to show cause under *Martinez* based upon inadequate assistance of postconviction counsel is not asserting a "claim" for purposes of § 2254(e)(2). *See, e.g.*, *Rodney v. Filson*, 916 F.3d 1254, 1261 (9th Cir. 2019). The provision thus does not bar an evidentiary hearing on the *Martinez* issue itself. The same conclusion logically would appear to apply to the *Maples* issue as well.

Moreover, if McClain overcomes the procedural default under *Martinez* (and/or *Maples*) at the hearing, then § 2254(e)(2) will not bar consideration of the evidence adduced at the hearing also on the underlying and intertwined merits claims of ineffective assistance of trial counsel.

The Ninth Circuit recently held in a published opinion that § 2254(e)(2) did not bar consideration of evidence received at a *Martinez* hearing also on the merits if the petitioner overcame the procedural default under *Martinez*. *See Jones v. Shinn*, ___ F.3d ___, No. 18-99006, 2019 WL 6442931, at *6–*8 (9th Cir. Nov. 29, 2019).

This conclusion is fully consonant with Supreme Court precedent regarding § 2254(e)(2), with respect to both *Martinez* and *Maples* as a potential basis for overcoming a procedural default.

In *Williams v. Taylor*, 529 U.S. 420, 432–34 (2000), the Supreme Court held that a lack of diligence or the presence of some greater fault attributable to the petitioner is a threshold requirement to the application of § 2254(e)(2). Without a predicate of lack of diligence or the presence of greater fault attributable to the petitioner, the remaining requirements of § 2254(e)(2) are inapplicable. *See id.* at 430–32, 437.

*Williams* further held that Congress codified this threshold diligence standard in 1996 in § 2254(e)(2) from the Court's caselaw establishing the criteria for when an evidentiary hearing was available.[5] *Id.* at 434. That caselaw in turn had borrowed the diligence standard from the Court's procedural-default-doctrine caselaw to determine also

---

28 U.S.C. § 2254(e)(2).

[5]The provisions in § 2254(e)(2) were adopted as part of the Antiterrorism and Effective Death Penalty Act of 1996.

6

the availability of a federal evidentiary hearing. *See id.* at 432–35. Under that borrowed procedural-default-doctrine caselaw, the fault of a petitioner's counsel was attributable to the petitioner in determining whether the petitioner had been diligent in circumstances where the petitioner had not been denied effective assistance of constitutionally required counsel. *See id.* at 432–33; *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 8–9 (1992); *Coleman v. Thompson*, 501 U.S. 722, 752–53 (1991).

*Martinez*, however, qualified the underlying procedural-default-doctrine caselaw that had been relied upon in the caselaw concerning the availability of a federal evidentiary hearing. *Martinez* essentially declined to attribute an attorney's fault to a petitioner where he was denied effective assistance of counsel under the otherwise constitutional *Strickland* standard[6] when counsel failed to raise a substantial claim of ineffective assistance of trial counsel in an initial-review collateral proceeding that presented the first meaningful opportunity to raise the claim. *See* 566 U.S. at 14.

*Maples* similarly qualified prior procedural default caselaw by holding that attorney fault was not attributed to the petitioner where attorney abandonment had severed the attorney-client agency relationship. *See* 565 U.S. at 280–83.

Nothing in *Williams* necessitates a conclusion that Congress, in codifying a diligence standard derived, ultimately, from Supreme Court procedural default caselaw, codified that jurisprudential standard only as it existed in 1996. Rather, in codifying a jurisprudential diligence requirement, it is not at all implausible that Congress intended to incorporate that diligence requirement as it was construed and applied in subsequent caselaw pertaining to the diligence requirement. *Cf. Jam v. Int'l Fin. Corp.*, 139 S. Ct. 759, 769–70 (2019) (1945 statute's reference to "same immunity from suit ... as is enjoyed by foreign governments" encompassed subsequent changes to the law of foreign sovereign immunity, including the FSIA); *West v. Gibson*, 527 U.S. 212, 217–19 (1999) (Title VII's

///

///

---

[6]*See Strickland v. Washington*, 466 U.S. 668 (1984).

7

reference to "appropriate remedies" included remedies appropriate under subsequent changes in the law).

Such a construction of § 2254(e)(2) is a sensible one. As is recognized in the plurality decision in *Detrich v. Ryan*, 740 F.3d 1237 (9th Cir. 2013) (en banc), "it makes little sense" to allow a petitioner to overcome a procedural default under *Martinez* only to then bar consideration of the same evidence on the merits of the claims that were rescued from procedural default by *Martinez*. *See id.* at 1247; *accord McLaughlin v. Laxalt*, 665 F. App'x 590, 593 (9th Cir. 2016); *Hill v. Glebe*, 654 F. App'x 294, 295 (9th Cir. June 16, 2016). To construe § 2254(e)(2) otherwise would make *Martinez*, as well as *Maples*, in Justice Jackson's words, "only a promise to the ear to be broken to the hope." *Edwards v. California*, 314 U.S. 160, 184 (1941) (Jackson, J., concurring).

With regard to the hearing evidence also being considered on the merits claims, the Court therefore does not as a threshold matter (*i.e.*, before the evidentiary hearing also initially on the *Martinez* and *Maples* issues) necessarily attribute the fault of McClain's state postconviction counsel—who did absolutely nothing on the record during the representation—to McClain in failing to develop the factual basis for his claims in the state courts. The Court further finds, again as a threshold matter before an evidentiary hearing also on the *Martinez* and *Maples* issues, that there is a credible argument that McClain himself exercised reasonable diligence, particularly given his borderline intellectual disability, in seeking to develop the factual basis for his claims, including, *inter alia*, requesting a mental health evaluation at sentencing.

The Court therefore holds that (a) § 2254(e)(2) does not bar an evidentiary hearing as to the *Martinez* issue and the *Maples* issue, and (b) the statute does not anticipatorily bar consideration of the hearing evidence also on the intertwined merits issues on the underlying claims of ineffective assistance of trial counsel in the event that McClain overcomes the procedural default under *Martinez* and/or *Maples*.

///

///

**2. McClain's Merits Claims Otherwise Warrant an Evidentiary Hearing**

The Court further is not persuaded by Respondents' argument that McClain's claims otherwise do not warrant an evidentiary hearing.

**a. Ground 1**

In Ground 1, McClain alleges that he was denied effective assistance of trial counsel when counsel failed to investigate his mental state and mental health history. He alleges that such investigation would have led to the development of viable defense to culpability under NRS § 200.366 at trial that he was incapable of understanding whether the victim was incapable of consenting.[7] He alleges that he would not have pleaded guilty and instead would have insisted on going to trial if counsel had developed such a defense. (ECF No. 69 at 6–10; ECF No. 89 at 2–14.)

Respondents incorporate their arguments from their answer in their opposition to McClain's motion for an evidentiary hearing. (ECF No. 91 at 3.)

Respondents maintain in their answer as to this claim, first, that McClain's admissions to the police "wholly undercut" any factual claim that he lacked the requisite understanding. The Court has compared the portions of the statement relied upon by Respondents with the remaining portions of the statement relied upon by McClain. (*Compare* ECF No. 88 at 6 *with* ECF No. 89 at 8–9.) Following that review, the Court is not persuaded that the portion relied upon by Respondents necessarily wholly undercuts Ground 1 such that an evidentiary hearing, with related expert testimony, is not warranted.

The Court notes that the alleged circumstances reflected in McClain's statements further have potential relevance to the disjunctive element in NRS § 200.366 regarding whether the activity was against the will of the victim. Before 2015, the statute did not include a "statutory rape" type basis for culpability where a victim below a certain age was

---

[7]The statute provided in pertinent part at the relevant time for culpability for sexual penetration that was "against the will of the victim or under conditions in which the perpetrator knows or should know that the victim is mentally or physically incapable of resisting or understanding the nature of his conduct." NRS § 200.366, as amended through 2007 Laws, ch. 528, §§ 7 & 17, at 3255.

9

1 incapable of consenting as a matter of law. That situation presented potential challenges for both the state and defendants in arguing a case to a jury.[8] However, the state nonetheless was required by the statute to prove, regardless of the victim's age, that the activity occurred either against the will of the victim or under conditions in which the perpetrator knew or should know that the victim was mentally or physically incapable of resisting or understanding the nature of the conduct. The presence of a potential argument as to the first disjunctive would heighten the importance of the second disjunctive in a given case.[9]

Respondents further urge that McClain's stipulation—directed to an exhaustion issue herein—that he cannot currently establish actual innocence under the standard in *Schlup v. Delo*, 513 U.S. 298 (1995), undermines this claim. Respondents maintain that the concession that McClain currently cannot satisfy the *Schlup* standard "is incompatible with his theory that his new expert report identifies an absolute defense to the state's charges, and with it, any possibility that McClain would have insisted in going to trial in the absence of the alleged deficient performance." (ECF No. 88 at 8.)

The Court is not persuaded. The Court does not read McClain's claim as one that trial counsel failed to pursue an "absolute"—as opposed to a potentially viable—defense. (*See* ECF No. 89 at 6.) Nor does the governing law require that he establish the existence of an "absolute" defense to prevail on an ineffective assistance claim in the context of a plea. He instead need show only "that there is a *reasonable probability* that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to

///

---

[8] *Inter alia*, it was at least problematic for a defendant to argue that an early adolescent or child consented to the sexual activity. On the other hand, while the State might maintain that the victim was too young to be capable of consent, there in truth was no lower bound established by the statute where a victim could not legally capably consent.

[9] *See also Honeycutt v. State*, 56 P.3d 362, 368–69 (Nev. 2002), *overruled on other grounds*, *Carter v. State*, 121 P.3d 592 (2005) (it is a defense to a charge of sexual assault that the defendant, from his point of view, reasonably believed that the victim had consented to the sexual activity).

trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (emphasis added). With respect to counsel's failure to develop a defense in particular, "the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense *likely* would have succeeded at trial," under an objective standard. *Id.* at 59–60 (emphasis added). The language used by the Supreme Court—"reasonable probability" and "likely"—clearly clearly does not require an "absolute" defense.

The *Schlup* standard, in contrast, requires a showing, that it is more likely than not that *no reasonable trier of fact* would have found the petitioner guilty of the offense beyond a reasonable doubt. *See Schlup*, 513 U.S. at 324–27. While, as Respondents point out, the first part of that formulation requires proof only by a preponderance, there is no requirement under *Strickland* and its progeny that a petitioner must demonstrate that counsel failed to pursue a defense that no reasonable trier of fact could reject. Rather, again, McClain's burden on Ground 1 is to establish only "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill, supra*.

A petitioner thus clearly is not required to satisfy the *Schlup* standard to present a potentially viable claim of ineffective assistance of trial counsel. Respondents cite no apposite controlling precedent—and can cite no such precedent—making making such a holding. McClain's stipulation as to actual innocence pertains to the exhaustion issue and only that issue, both under the procedural history of this case and under the governing law. A stipulation that a petitioner cannot currently demonstrate that he is actually innocent under the *Schlup* standard clearly is not a stipulation that he is actually guilty, either in truth or under the law.[10] Nor is it a stipulation functionally that the petitioner does not have a viable ineffective-assistance claim.

---

[10]For example, in the paradigm "he said, she said" situation, the defendant would not be able to satisfy the *Schlup* standard because a reasonable juror could find the complaining witness' testimony credible and vote to convict. That would not signify, however, that the defendant was actually guilty, either in fact or as a matter of law. The "he said, she said" credibility determination still would present a triable issue as to guilt or innocence before a jury.

11

In the present case, the intellectually-challenged defendant pleaded, with alacrity, to a plea deal that did not functionally change his maximum exposure. Before the plea, he was exposed to maximum sentencing functionally equivalent to life without the possibility of parole. After the plea, he was exposed to maximum sentencing functionally equivalent to life without the possibility of parole. Respondents point to the fact that McClain reduced his maximum potential required incarceration with consecutive sentencing from 200 years to 70 years via the plea. Yet that 130-year reduction in exposure clearly had no practical significance for the 30-year-old defendant.

Absent a material prospect of concurrent sentencing following the plea (supported by a concerted effort toward that end by defense counsel before sentencing, which did not occur in this case), the plea deal provided no substantial practical benefit to the defendant in terms of his maximum exposure before and after the plea. A reasonable defendant in such a situation arguably would have had little reason, objectively, to take this plea deal rather than go to trial – even without considering the potential strengths and weaknesses of the state's case and possible defenses thereto. A defendant in such a situation would have had even more incentive to proceed to trial—as he had nothing substantial to lose in relation to the plea deal—if he had an even arguable, albeit perhaps not "absolute," defense to the charges.

Ground 1 therefore presents a potentially viable, and certainly hearing-worthy, claim, on a *de novo* review if McClain overcomes the procedural default of the claim under *Martinez* and/or *Maples*.[11]

**b. Ground 2**

In Ground 2, McClain alleges that he was denied effective assistance of trial counsel when counsel failed to file a presentence motion to withdraw his plea based upon his failure to understand the consequences of the plea. The threshold showing required

///

---

[11]Respondents' additional argument relating to the *M'Naghten* standard also has no relevance to the claim presented in Ground 1.

12

for a presentence motion was less than that required for a post-sentence motion under state law. (ECF No. 69 at 10–11; ECF No. 89 at 14–16.)

Respondents maintain that, to the extent that this claim is based upon what McClain said at sentencing, defense counsel could not know of those statements prior to sentencing. Respondents urge that, to the extent that this claim is based upon McClain's statements reflected in the presentence report, there is no evidence in the record of when counsel received the report. Respondents additionally maintain that McClain's "isolated" statements in the report were not of consequence when considered in conjunction with his statements on the record during the plea colloquy. (ECF No. 88 at 10–11.)

An intellectually-challenged defendant pleaded guilty to two charges each carrying a minimum 35-year to life sentence. Then, a short time later, he made multiple statements strongly suggesting that he did not understand that he most certainly was going to prison for at the very least 35 years rather than possibly instead receiving probation. Regardless of whether trial counsel, in the apparent rush to judgment in this case, failed to review the presentence report before sentencing or instead seasonably reviewed the report before sentencing and failed to consider its significance, McClain presents a potentially viable and hearing-worthy claim. Moreover, even if the Court were to assume that counsel had notice of the full extent of the issue only at sentencing, a potentially viable and hearing-worthy claim is presented as to her failure to then seek to continue the sentencing for the presentation of a presentence motion to withdraw the plea. Finally, with an intellectually-challenged defendant, a seemingly adequate plea colloquy does not negate the claim on the face of the record.[12]

Ground 2 therefore presents a potentially viable and hearing-worthy claim, on a *de novo* review if McClain overcomes the procedural default of the claim under *Martinez* and/or *Maples.*

///

---

[12]Respondents' arguments regarding whether McClain can show prejudice, *i.e.*, whether McClain potentially would have instead insisted on going to trial, are substantially covered in the discussion of Ground 1.

13

**c. Ground 3**

In Ground 3, McClain alleges that he was denied effective assistance of trial counsel when counsel failed to present mitigation evidence at sentencing. (ECF No. 69 at 11–13; ECF No. 89 at 16–18.) Respondents maintain, *inter alia*, that there is not a reasonable probability that more extensive effort by defense counsel would have led to a different outcome. (ECF No. 88 at 12.) The Court is unpersuaded that, on a *de novo* review, Ground 3 does not present a potentially viable and hearing-worthy claim on the face of the current record.

**d. Ground 4**

In Ground 4, McClain alleges that he was denied effective assistance of trial counsel when counsel failed to investigate his intellectual disability and mental status, leading to him entering a plea that was not knowing, intelligent and voluntary. (ECF No. 69 at 13–15; ECF No. 89 at 19–21.)

The Court is not persuaded by Respondents' contention that Ground 4 is redundant of Ground 1. The earlier ground alleges that McClain was denied effective assistance because trial counsel failed to investigate a potentially viable defense to the charges based upon his metal state and mental health history that would have led McClain to reject the plea offer and go to trial. Ground 4, in contrast, alleges that McClain was denied effective assistance because trial counsel failed to investigate his intellectual disability and mental status and thus allowed him to enter a plea that in truth was not knowing, intelligent and voluntary given his cognitive and mental health issues. Those are two distinct claims attacking the voluntariness of the plea due to ineffective assistance of trial counsel based on two distinct reasons—counsel's failure to pursue a potentially viable defense to culpability and counsel's failure to marshal facts necessary to assess McClain's ability to understand the nature of the plea and its consequences. The mere fact that those two distinct alleged failures both followed from an underlying failure to investigate McClain's cognitive and mental health issues does not make the claims

///

redundant. Nor does the fact that the two claims both attack the voluntariness of the plea—upon two distinct bases—render the claims redundant.

The Court also is not persuaded by Respondents' contention that—for purposes of overcoming a procedural default under *Martinez*—Ground 4 is not a claim of ineffective assistance of counsel but instead is a substantive claim challenging the voluntariness of his plea. Under established law, the voluntariness of a plea clearly can be challenged based upon alleged ineffective assistance of counsel. *Hill, supra*. The fact that the alleged prejudice sustained on the ineffective-assistance claim was entry of a plea that was not knowing, intelligent and voluntary does not lead to a conclusion that the claim is a substantive claim. Respondents cite no apposite caselaw supporting their position; and this is not even a debatable point under the governing law. *See, e.g., Sherwood v. Sherman*, 734 F. App'x 471, 473–75 (9th Cir. May 16, 2018) (unpub.) (holding that a comparable claim presented a colorable claim of ineffective assistance of trial counsel and reversing for consideration of a possible evidentiary hearing); *Griffin v. Johnson*, 350 F.3d 956, 960 (9th Cir. 2003) (considering a comparable claim as a COA-worthy claim in connection with procedural default issues).[13]

The Court further is not persuaded by Respondents' contentions concerning the merits of Ground 4. Respondents insist McClain cannot establish that his plea was involuntary because he does not allege that he was coerced, threatened, or otherwise induced to accept a plea against his will. (ECF No. 88 at 14.) Respondents' recital hardly exhausts the bases upon which a plea can be found to not be knowing, intelligent and voluntary. Cognitive and mental health issues most certainly can have a bearing on whether a defendant knowingly, intelligently and voluntarily waived his constitutional rights in entering a guilty plea. *See, e.g., Godinez v. Moran*, 509 U.S. 389 (1993). Nor, as discussed previously, is the Court persuaded that the plea colloquy itself—while

---

[13]Moreover, the availability of McClain's alternative basis for overcoming a procedural default under *Maples* is not necessarily limited to claims of ineffective assistance of trial counsel under current jurisprudence. In all events, however, Ground 4 clearly presents a colorable claim of ineffective assistance of trial counsel.

relevant—conclusively negates any possibility that McClain did not enter a knowing, intelligent and voluntary plea.

The Court thus is unpersuaded that, on a *de novo* review, Ground 4 does not present a potentially viable and hearing-worthy claim on the face of the current record.

**e. Ground 5**

In Ground 5, McClain alleges that he was denied effective assistance of trial counsel when counsel failed to consult with him regarding an appeal. (ECF No. 69 at 15–16; ECF No. 89 at 21–22.)

Respondents argue with potentially more force that application of *Martinez* to this claim is precluded by *Davila v. Davis*, 137 S. Ct. 2058 (2017), which held that the rule in *Martinez* is not available to overcome the procedural default of a claim of ineffective assistance of appellate counsel.[14] However, *Davila* is at least factually distinguishable from the present situation. *Davila* concerned the failure of direct appeal counsel to raise a particular claim on direct appeal. Ground 5 instead concerns a failure of trial counsel to consult with the defendant regarding filing an appeal. A number of lower federal courts have proceeded on the assumption that *Martinez* applied to comparable claims of ineffective assistance of trial counsel both before and after *Davila*, albeit without explicitly addressing whether such a claim was encompassed within the *Martinez* rule. *See Grimes v. Superintendent*, 619 F. App'x. 146 (3d Cir. July 22, 2015) (unpub.) (pre-*Davila*); *Gannaway v. Glunt*, No. 15-4241, 2018 WL 6112065, at \*6 (E.D. Pa. July 27, 2018) (unpublished report and recommendation by a magistrate judge, on a concession by the Commonwealth that *Davila* did not preclude the claim); *Fucci v. Florida Dep't of Corrs. Sec'y*, No. 1:16cv271/WTH/EMT, 2017 WL 9487097, at \*15–\*16 (N.D. Fla. Oct. 19, 2017) (unpublished report and recommendation by a magistrate judge) (post-*Davila*); *Elder v.*

---

[14]It does not appear that McClain's counsel responded to this argument. The Court in the final analysis is seeking to do justice under the law, not simply determine the winner of a debate. However, if McClain's counsel fails to address argument presented by Respondents, counsel runs a substantial risk that the Court may rule against her client simply on the showing and arguments made, or more accurately the lack thereof by his counsel.

*Clarke*, No. 7:13CV00500, 2014 WL 4407563, at *7 (W.D. Va. Sept. 8, 2014) (unpub.) (pre-*Davila*); *but see Reyes v. Gilmore*, Civil Action No. 17-1992, 2017 WL 4411051, at *6 (E.D. Pa. Aug. 10, 2017) (in an unpublished report and recommendation, the same magistrate judge as in *Gannaway, supra*, concluded that *Davila* precluded application of *Martinez* to a claim based upon a failure to file an appeal as requested).

Moreover, as noted previously, the availability of McClain's alternative basis for overcoming a procedural default under *Maples* is not necessarily limited to claims of ineffective assistance of trial counsel under current jurisprudence.

The Court will direct an evidentiary hearing on Ground 5 together with the remaining claims given that: (a) the current state of the controlling jurisprudence remains unsettled regarding the extent of the application of the *Martinez* and *Maples* rules to this type of claim; (b) § 2254(e)(2) does not apply to categorically bar an evidentiary hearing as to the *Martinez* and *Maples* issues as an initial matter as the Court considers the law pertaining to those issues; (c) the Court is directing an evidentiary hearing on the issues pertaining to the remaining grounds, and (d) the Court anticipates that only limited additional testimony and other evidence will be required as to the issues pertaining to this particular ground over and above that required for the other grounds.

The Court otherwise is not persuaded by Respondents' arguments that, on the face of the record, trial counsel did not have a duty to consult with McClain regarding a direct appeal, as opposed to instead withdrawing from her representation of the intellectually-challenged defendant only days after judgment was entered. The Court thus is unconvinced that, on a *de novo* review, Ground 5 does not present a potentially viable and hearing-worthy claim on the face of the current record.

///

///

///

///

///

**III.    CONCLUSION**

It is therefore ordered that the Court's prior show-cause inquiry initiated by its September 30, 2019 order (ECF No. 93) is terminated, with the Court holding that Petitioner's claims still are technically exhausted by procedural default.

It is further ordered that Petitioner's motion for an evidentiary hearing (ECF No. 90) is granted. This matter is set for an evidentiary hearing on **February 19, 2020, at 9 a.m., in Courtroom 5** of the Bruce R. Thompson Federal Courthouse, 400 S. Virginia Street, Reno, Nevada. The evidentiary hearing will cover all legal and factual issues pertaining to Petitioner's claims.

It is further ordered that counsel for the parties will complete the following prehearing procedures:

1. **Exchange of Preliminary Witness and Exhibit Lists and Stipulations.** No later than 21 days prior to the hearing, counsel will confer together either in person or by telephone and will (a) exchange preliminary exhibit and witness lists, (b) exchange (either in person or indirectly such as via mail, email or fax) any exhibits not already possessed by opposing counsel, and (c) discuss stipulations as to authenticity and any evidentiary objections.

2. **Final Witness and Exhibit Lists and Evidentiary Objections.** No later than 14 days prior to the hearing, counsel will jointly file a consolidated final list of the witnesses and exhibits to be offered jointly and/or by each party and which will further identify any evidentiary objections that may be anticipated in advance of the hearing. No party will be allowed to introduce over objection any witness or exhibit not listed in the final witness and exhibit list, except that a party may file a supplement no later than 7 days prior to the hearing listing evidence in response to any witness or exhibit identified for the first time in the final list. No objection that may be anticipated in advance of the hearing will be preserved unless raised in the final list.

///

3. **Length of Hearing; Interpreters; Other Housekeeping Matters.** The Court anticipates that the hearing possibly may take up to a full day. If counsel (a) anticipate that the hearing will run longer than one full day, (b) anticipate that an interpreter will be needed for a party or a witness, or (c) have other housekeeping matters to address regarding the hearing, they will contact Courtroom Administrator Peggie Vannozzi at 775-686-5839 regarding the same no later than 21 days prior to the hearing.

4. **Prisoner Transport Order and Subpoenas of Non-Prisoner Witnesses.** No later than 14 days before the hearing, Petitioner's counsel will submit an order to transport prisoner to secure Petitioner's presence at the hearing; and any party wishing to call any other prisoner to testify similarly will submit an order to transport prisoner by that date. No continuance will be granted for failure to secure the attendance of Petitioner or any other prisoner unless an order to transport prisoner was timely sought. Similarly, no continuance will be granted for failure to secure the attendance of a non-prisoner witness who was not seasonably subpoenaed. Each prisoner-transport order will include the following sentence as the final paragraph: "The Clerk of Court additionally will provide a copy of this order to the Marshal's Reno office."

5. **Prehearing Memoranda.** No later than seven calendar days prior to the hearing, counsel for Petitioner and for Respondents each will file a prehearing memorandum setting forth the evidence that they expect to present at the hearing together with their legal argument regarding the issues to be raised by the anticipated evidence presented by the parties at the hearing.[15]

///

---

[15]Counsel should not assume that post-hearing memoranda or other further serial briefing will be ordered as a matter of course following the hearing. The Court is seeking to bring all legal and factual issues to a head for a resolution in the district court via the evidentiary hearing and the following findings, conclusions and order. Counsel should prepare their prehearing memoranda on the assumption that it will be their final opportunity to brief the issues in the case in the district court.

19

6. **Exhibit Binders.** On the morning of the hearing, counsel for Petitioner and for Respondents each will provide to the Courtroom Administrator (1) two binders or sets of exhibit binders, with one such binder or set of binders containing the exhibits offered for introduction at the hearing, and the other binders or sets being for the presiding judge; and (2) an electronic copy of the same on a thumb drive. Each counsel additionally will provide one additional binder or set of binders to opposing counsel. If joint exhibits are submitted, counsel will arrange between themselves similarly to provide to the Courtroom Administrator two binders or sets of exhibit binders containing the joint exhibits. The "original" exhibits within the binder(s) each will be marked by an exhibit sticker, prior to being copied for the other sets of binders. Any lengthy exhibits that are not otherwise internally numbered and that likely will be referenced in detail during live testimony must be Bates-number stamped for ease of reference during the testimony. .

DATED THIS 13th day of December 2019.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE